### GEORGIA EMPIRE MUTUAL INSURANCE COMPANY *v.* WRIGHT, comptroller-general.

There being of force in this State in 1896 a general law prohibiting, with certain exceptions, all insurance companies from doing business until they had paid in a capital stock or assets of at least one hundred thousand dollars, it was not competent for the General Assembly in that year to pass an amendment to the charter of an insurance company not embraced within any of the exceptions above referred to, authorizing it to transact business without having the required amount of capital stock or assets.    Such an amendment was a special law, within the meaning of the constitution, in a case already provided for by a general law.

Argued October 6, — Decided October 29, 1903.

Petition for mandamus.    Before Judge Lumpkin.    Fulton superior court.    August 5, 1903.

*W. I. Heyward,* for plaintiff. *John C. Hart, attorney-general,* for defendant.

COBB, J.  The Georgia Empire Mutual Insurance Company applied to the comptroller-general for a license to do business as an insurance company in this State.  The comptroller-general refused to grant the license, and this is an application for a mandamus to compel him to issue the license.  The company applying for the license was chartered by an act of the General Assembly, approved September 4, 1885.  See Acts 1884–5, p. 166. Section 9 of the act provided that at least one hundred thousand dollars of the capital stock should be actually paid in cash, stocks and bonds, or mortgages on real estate, before the company should proceed with its business " either as a mutual or stock company." In 1887 the General Assembly passed a general law to regulate the business of insurance in this State. ˎ Acts 1887, p. 113; Civil Code, § 2034.  Section 3 of that act provided that no insurance company, except those of certain specified classes, should be allowed to transact business in this State " unless possessed of at least one hundred thousand dollars of actual cash capital paid up, or assets, and invested in bonds or stocks " estimated at their actual market value, " or in mortgages on real estate" worth double the amount of the debt thereby secured.  Mutual insurance companies were not within any of the excepted classes.  By an act approved December 12, 1896, the General Assembly undertook to amend the charter of this company, by striking out the word " mutual " from the clause above quoted, and providing that the company should have the one hundred thousand dollars paid in before doing business " as a stock company."  Acts 1896, p. 97.

It is claimed that the effect of this amendment was to allow the company to do business as a mutual insurance company after the passage of the act, without having one hundred thousand dollars of the capital stock or assets paid in.  It is clear, however, that the General Assembly had no power to pass this amendment. The general law of 1887 did not except mutual insurance companies from its operation, and the amendment of 1896 was a special law enacted in a case already provided for by the general law. See *Atlanta Savings Bank* v. *Spencer*, 107 *Ga.* 629 (3).  The amendment being void, the company was bound by its original charter and the general law of 1887, and could not do business either as a mutual or a stock company without having assets or paid up capital of at least one hundred thousand dollars as required

by those acts. Not having this amount of assets or capital paid in, it was the duty of the comptroller-general to decline to issue the plaintiff company a license, and the judge. of the superior court properly refused to award a mandamus absolute compelling him to do so.　　　*Judgment affirmed.　All the Justices concur.*